[Civ. No. 11925. Third Dist. Dec. 16, 1969.]

CLARENCE D. VAUGHN, Plaintiff and Appellant, v.
JOHN C. DeKREEK et al., Defendants and Respondents.

**COUNSEL**

George Douglas Vaughn for Plaintiff and Appellant.

Young, Nareau & Hoyt and Robert J. Nareau for Defendants and Respondents.

## OPINION

**BRAY, J.**\*—Plaintiff appeals from judgment after jury verdict in favor of defendants in an action to foreclose a mechanic's lien.

### Questions Presented

1. Is the jury's finding that plaintiff, who was unlicensed, was acting as a contractor supported by the evidence?

2. Is the action moot because of satisfaction of the judgment?

### Record

Plaintiff is a retail nurseryman, doing business at Woodland under the name of Vaunlanda Gardens Nursery, having been such since 1932. He has a retail sales tax license but does not have a contractor's license.

Defendants are homeowners who wanted their residence surrounded with plants, shrubs and a lawn. Defendants, who had secured a bid from another nursery, requested plaintiff to look at their yard and suggest plant materials. Plaintiff and defendants discussed ideas and plaintiff tendered and defendants accepted an estimate for a total cost of approximately $750. During the progress of the work suggested changes were made. The most significant was the planting of a complete, ready-to-enjoy lawn of dichondra. When the work was completed, plaintiff tendered a bill for $2,114, based on an hourly rate for labor and a charge for materials plus sales tax. Defendants refused to pay. Plaintiff filed a mechanic's lien for labor and materials and then brought this action for its foreclosure. Plaintiff contended that he was not acting as a contractor but merely one furnishing materials as a supplier and then installing them as an employee of defendants, and, therefore, he was not legally required to have a contractor's license. Defendants, on the other hand, contended that plaintiff was acting as a contractor and having no contractor's license was barred by section 7031 of the Business and Professions Code from recovering for the work done and materials furnished. The issue of whether plaintiff was acting as a contractor was presented to the jury. The jury found that he was a contractor, and having no contractor's license he was barred from recovery. Judgment was entered in favor of defendants and this appeal by plaintiff followed.

1. Contractor.

Section 7028 of the Business and Professions Code provides: "It is

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

unlawful for any person to engage in the business or act in the capacity of a contractor within this State without having a license therefor, unless such person is particularly exempted from the provisions of this chapter. Any violation of this section is a misdemeanor."

Section 7031 provides, in pertinent part, that no person acting as a contractor may bring or maintain any action for the collection of compensation for the performance of any contract for which a license is required without alleging and providing that he was a duly licensed contractor at all times during the performance of the contract.

Section 7052 provides: "This chapter does not apply to any person who only furnishes materials or supplies without fabricating them into, or consuming them in the performance of, the work of the contractor."

Section 7053 provides: "This chapter does not apply to any person who engages in the activities herein regulated, as an employee with wages as his sole compensation."

Plaintiff contends that his work came within the exemptions provided by these latter two sections.

Section 7026 provides, in pertinent part: "[A] contractor is any person, who undertakes or offers to undertake to or purports to have the capacity to undertake to or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any . . . project, development or improvement, or to do any part thereof. . . ."

Unfortunately, neither party to the appeal has given us a résumé of the testimony. Plaintiff has contented himself with citing authorities to the effect that the Business and Professions Code does not preclude one from furnishing materials as a supplier and then installing them as an employee, a proposition that cannot be doubted (See *Cargill* v. *Achziger* (1958) 165 Cal.App.2d 220, 223 [331 P.2d 774]). He neglects to point out the evidence which he claims brings him within that category. Defendants, on the other hand, merely state, without referring to the testimony, that the evidence discloses that plaintiff was acting as a contractor, so the court has had to study the transcript (some 175 pages) unaided by direction from counsel.

The main question in this case is whether the agreement between the parties was one in which plaintiff was acting as a contractor or was acting only as a materialman supplying plants and as an employee of defendants in installing them.

The parties agree that defendant John DeKreek came to plaintiff's

nursery and told plaintiff that he would like to have a garden at his home, and an appointment was made for plaintiff to come there and discuss with Mr. and Mrs. DeKreek the matter of plaintiff installing that garden. At the home the defendants discussed generally the type of garden they wished, and plaintiff suggested plants to be installed and the sum of $750 for the entire job was mentioned. The parties differ radically as to the terms of the oral agreement entered into between them.

John DeKreek testified that after a discussion that the work which defendants desired done would cost between $500 and $1,000, he said, "Can you do the job for $750 and give me what I like, a designed plan." Plaintiff replied, "Yes." Plaintiff contends that the sum of $750 was stated only as the approximate cost of the proposed work. He testified: "Mr. DeKreek very firmly placed as an approximate figure $750 in front of my face for me to plant for him, and if you folks know me, I always say, 'Well, maybe.' 'Approximately.' " No discussion was had as to the character in which plaintiff was to act—contractor or employee. DeKreek testified that he did not know what plaintiff was giving us "except the general plan."

Regardless of what the cost was to be, the evidence shows that plaintiff, as the jury found, was acting as a contractor. Defendants told plaintiff generally what type of a garden they wanted, that they wanted an ivy front yard, tea and climbing roses, a dichondra rear lawn, a small tree for Christmas decorations in front and a shade tree in back, and that they would not require a plan of specific plants, but the selection of the plants, the planning of the garden and the providing of the material and labor was to be done by plaintiff. In the words of section 7026, plaintiff submitted a bid to defendants to "construct" a "development or improvement." During the progress of the work, plaintiff supplied four men besides himself to do the planting. The evidence would justify the jury in finding that the agreement was that plaintiff was to supply materials and labor for the garden at a price not to exceed $750, and the detail of the landscaping was to be determined by him in accordance with the general ideas discussed by the parties.

Plaintiff billed defendants for $2,114, of which $415.25 was labor, including plaintiff's labor charge of $182.

While the work was progressing, in a telephone conversation, plaintiff, according to Mr. DeKreek, said: " 'We are approaching $750,' and we had a shade tree or something to plant, and I said 'You cannot stop for another hundred dollars.' "

Plaintiff, whose testimony was considerably vague, said that DeKreek called him about the middle of the work and plaintiff told him, "we are

going over the amount that you mentioned in dollars." When asked what DeKreek replied to that, plaintiff failed to give a relevant answer.

■ Plaintiff testified that the major cost of the work over the estimated cost of $750 was that Mrs. DeKreek requested that the dichondra which plaintiff was "spot planting" be planted so she would have a complete lawn and not have to wait for the spaces left in the spot planting to fill. This fact, however, did not in any way change the contract relationship between the parties which evolved at the first discussion.

■ The question of whether plaintiff was functioning as an un-licensed contractor or merely as an employee hired by defendants to supply material and act as an employee is essentially a question of fact. (*Cargill* v. *Achziger, supra,* 165 Cal.App.2d at p. 222.) In that case the jury found that the plaintiff was not acting as a contractor because, among other matters not found in the case at bench, the plaintiff notified the defendant that he would have to take the work on a labor and materials basis since he was not licensed as a contractor.

■ "The determination of whether the status of an employee or that of an independent contractor exists is governed primarily by the right of control which rests in the employer, rather than by his actual exercise of control; and where no express agreement is shown as to the right of the claimed employer to control the mode and manner of doing the work, the existence or nonexistence of the right must be determined by reasonable inferences drawn from the circumstances shown, and is a question for the jury." (*Hardin* v. *Elvitsky* (1965) 232 Cal.App.2d 357, 373 [42 Cal.Rptr. 748]; *Dahl-Beck Elec. Co.* v. *Rogge* (1969) 275 Cal.App.2d 893, 900 [80 Cal.Rptr. 440].)

■ In the case at bench, there was no express agreement as to control of the mode and manner of doing the work, but the reasonable inference which the jury could, and undoubtedly did, draw from the evidence was that such control was in the plaintiff. Defendants stated generally what they wanted in the yard, but the manner and mode, and even the selection of some of the plants and the direction of the workmen, was left to plaintiff. While Mrs. DeKreek did ask for a change in the amount of planting for the lawn, there is no evidence that she in any way directed plaintiff or his employees in doing the work, nor did either defendant tell plaintiff "where to dig, when to come to work and what degree of care was required." (*Dahl-Beck Elec. Co.* v. *Rogge, supra,* at p. 901.)

It is not contended that the contractor licensing laws do not apply to

contractors who install and plant gardens. Cases cited by plaintiff such as *Greene* v. *Brooks* (1965) 235 Cal.App.2d 161 [45 Cal.Rptr. 99], to the effect that a partner in an unlicensed partnership or joint venture may sue for an accounting and dissolution; *Latipac, Inc.* v. *Superior Court* (1966) 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564], where substantial compliance with the licensing requirements were found; and *S & Q Constr. Co.* v. *Palma Ceia Dev. Organization* (1960) 179 Cal.App.2d 364 [3 Cal.Rptr. 690], where it was held that an unlicensed contractor could use claims arising under the contract as a setoff in an action in a related suit by the other party to the contract, are obviously not in point.

Plaintiff relies on *Denton* v. *Wiese* (1956) 144 Cal.App.2d 175 [300 P.2d 746]. There, however, the trial court found on a conflict in the evidence that the plaintiff was to receive an agreed hourly rate of pay for his services.

■■■ All of the materials supplied and labor furnished by plaintiff were part of the project to construct a garden. The court and the jury viewed the premises for the purpose as the court told the jury "to see the physical setup, the location of the project, where things were done; but not to consider the present condition of the plants or of the project." Thus, in determining plaintiff's relationship to defendants, the physical evidence of the layout of the garden as done by plaintiff bore upon the fact that plaintiff was "constructing" the "improvement" rather than acting as an employee of defendants. The jury's view of the garden constituted independent and substantial evidence. (*County of San Diego* v. *Bank of America* (1955) 135 Cal.App.2d 143, 149 [286 P.2d 880].)

Section 7059, Business and Professions Code, provides the board (Contractors' State License Board) "may adopt reasonably necessary rules and regulations to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business. . . ." Pursuant to that authority, the board adopted a regulation, rule 732, in which "Landscaping Contractors" are defined in Class 27 as "A landscaping contractor whose principal contracting business is the execution of contracts, usually subcontracts, requiring the art, ability, experience, knowledge, science and skill to intelligently grade and prepare plots and areas of land for architectural horticulture and the decorative treatment, arrangement, planting and maintenance of gardens, lawns, shrubs, vines, bushes, trees and other decorative vegetation . . . in such a manner that, under an agreed specification, acceptable landscaping projects can be executed." (Cal. Admin. Code, tit. 16, ch. 8, § 747.) In *People* v. *Vis* (1966) 243 Cal.App.2d 549, 557 [52 Cal.Rptr. 527], the court stated that the above stated rule of the board "does not include the seeding and planting of land for landscaping purposes, or the maintenance

of gardens, lawns, etc., but is restricted to a contractor who grades and prepares land *for* 'architectural horticultural and the decorative treatment, arrangement, planting and maintenance of gardens,' etc., and who does the construction work described in the last phrase of said rule." The court then pointed out (at p. 558) that "grading and filling came within the statute" and held that "insofar as appellant's contract called for him to place topsoil upon the land and to finish-grade the same, that is the type of operation that was intended to come within the statute" requiring a contractor's license.

█ In the instant case, plaintiff, in addition to providing trees, shrubs, flowers, seed, etc., provided three buckets of gravel, 23 pounds of rock, three buckets of sand and pea gravel, 33 sacks of soil builder, 50 pounds of soil food, and a load of silt. Some soil was moved and there was a general leveling of the front yard. Plaintiff stated that "there wasn't enough soil, later on when this soil was delivered . . . we graded it, floated, shoveled it and had it to . . . contour." The change in the planting of dichondra "meant removing of the soil from this whole area so as there would be a place for this sod to be level with the concrete. . . . [W]e graded it out to this metal edge. . . . This soil, then, entailed extra moving around to a low spot. . . ." The DeKreeks did not tell plaintiff they wanted a specific amount of soil builder added to the soil. Plaintiff determined what amount would be for the betterment of the plants.

The evidence showed that plaintiff's work was considerably more than the mere "seeding and planting" for which, in *People* v. *Vis, supra,* the court said Class 27 did not require a license. █ It is clear that the jury, in addition to the testimony, had the opportunity of seeing on the ground the type of work which was done and determined that plaintiff agreed to place topsoil on the land and to grade and prepare defendants' land for the horticultural and decorative treatment, arranging and planting a garden.

█ It is with some reluctance that we find that the evidence supports the conclusion that plaintiff was acting as a contractor. Apparently plaintiff did, at least, a fair job for defendants. There was some indication that some of the plants did not survive, but also there was evidence that defendants were satisfied with the work when it was finished. It seems too bad that because of the licensing statute plaintiff received nothing for his materials and work and defendants receive an undeserved windfall, but this court is bound by the jury's determination, supported by adequate evidence, that plaintiff was acting as an unlicensed contractor and by the legislative requirement that the contractor be licensed. (See *General Ins. Co. of America* v. *St. Paul Fire & Marine Ins. Co.* *(Cal.App.) 80 Cal.Rptr. 856.)

---

*A rehearing was granted by the Court of Appeal on October 16, 1969. The final opinion was filed on December 18, 1969, and certified for nonpublication.

2. Action is not moot because of satisfaction of judgment.

 The judgment for costs was entered and notice of appeal filed. On November 21, 1967, satisfaction of the judgment was filed.

Defendants contend that by reason of the payment of the judgment this action became moot. Plaintiff contends that as execution could have issued, the payment of the judgment was compulsory and not voluntary and therefore the appeal may be maintained. We conclude that the appeal was not made moot and that consideration of the above issues was necessary.

 " 'It has been held by our Supreme Court that the voluntary payment of a judgment will not deprive a party of his right to appeal unless it is shown that the payment was by way of compromise or with an agreement not to take or prosecute an appeal. (*Warner Bros.* v. *Freud, supra,* [131 Cal. 639 (63 P. 1017, 82 Am.St.Rep. 400)]; *Hayes* v. *Nourse,* 107 N.Y. 577 [14 N.E. 508, 1 Am.St.Rep. 891].) The principle is stated in 2 Ruling Case Law, page 65, section 47, as follows: "As a general rule, however, one against whom a judgment or decree for a sum of money has been rendered does not, by voluntarily paying or satisfying it, waive or lose his right to review it upon a writ of error or appeal unless such payment or satisfaction was by way of compromise or with an agreement not to pursue an appeal or writ of error. . . . The better view accordingly is, that though the execution has not issued the payment of a judgment must be regarded as compulsory, and therefore as not releasing error, nor depriving the payer of the right to appeal. Certainly the fact that the satisfaction of the judgment is coerced by execution or other process, such satisfaction being *in invitum,* does not operate as a waiver of the right to an appeal or writ of error." ' " (*People* ex rel. *Dept. Public Works* v. *Richman,* 242 Cal.App.2d 380, 385 [51Cal.Rptr. 454].)

 As stated in *Reitano* v. *Yankwich* (1951) 38 Cal.2d 1, 4 [237 P.2d 6], concerning the payment of the judgment there: "[I]n the instant case there is no indication that the payment of the judgment for costs was by way of compromise or pursuant to an agreement not to prosecute an appeal."

Judgment affirmed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied January 14, 1970.