[No. B016965. Second Dist., Div. Seven. Nov. 13, 1987.]

WALTER E. HELLER WESTERN, INCORPORATED, Plaintiff, Cross-defendant and Respondent, v.
TECRIM CORPORATION, Defendant, Cross-complainant and Appellant.

150

**COUNSEL**

Ball, Hunt, Hart, Brown & Baerwitz, Neal B. Thompson, Jr., and Agnes H. Mulhearn for Defendant, Cross-complainant and Appellant.

Skadden, Arps, Slate, Meagher & Flom, Michael A. Diamond and Madison S. Spach, Jr., for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**JOHNSON, J.**—Tecrim Corporation (Tecrim) appeals from a summary judgment entered against it in favor of Walter E. Heller Western Incorporated (Heller) in a dispute arising out of a subordination agreement between

the two parties. The issue on appeal is whether the trial court erred in granting summary judgment by finding the subordination agreement was supported by consideration and by not addressing the question whether Tecrim's cross-complaint raised triable issues of material facts regarding rescission of contract based on fraud and mistake and the breach of duty of good faith and fair dealing issues which could not be resolved by a finding of consideration. For the reasons set forth below, we hold the trial court erred and reverse.

## FACTS AND PROCEEDINGS BELOW

The pleadings reveal the following. Heller entered into a written Inventory Loan Security Agreement with Alpha Steel Tube & Shapes, Inc. (Alpha) on or about October 25, 1977. Among other things, this agreement granted Heller a security interest in all of the inventory then owned or thereafter acquired by Alpha. On or about November 13, 1981, Tecrim entered into a written consignment agreement with Alpha to deliver 619 coils of cold rolled steel to be used as raw material by Alpha for manufacturing purposes. Tecrim and Alpha then executed a security agreement in which Alpha granted Tecrim a security interest in Alpha's inventory and all products and proceeds thereof. On November 16, 1981, in an attempt to perfect its security interest Tecrim gave written notice to Heller of its intent to consign steel to Alpha and of its purchase money security interest in the rolled steel coils, work in progress and finished goods. Heller then informed Tecrim of its existing financing arrangements with Alpha. On November 18, 1981, Tecrim and Heller entered into a written subordination agreement in which they agreed any interest Tecrim might have as a result of its purchase money security interest or the consignment of inventory agreement would be junior to Heller's security interest once the inventory had entered the manufacturing process.

In its complaint Heller alleged Tecrim subsequently converted certain inventory having a value in excess of $473,000 for its own use and benefit. It further alleged the inventory was delivered to Tecrim to reduce the preexisting obligations owed it by Alpha which was contrary to the terms of the subordination agreement.

In its answer Tecrim pleaded the following affirmative defenses: Heller had not stated any facts sufficient to state a cause of action; the subordination agreement was not supported by consideration; if the contract had been supported by consideration at the time of its execution such consideration failed when Heller discontinued financing Alpha; the subordination agreement was illusory since it did not purport to require Heller to finance

Alpha; and Tecrim had a perfected purchase money security interest in the subject property which was superior to Heller's interest.

Tecrim cross-complained for fraud, breach of contract, rescission based on fraud, mistake, and failure of consideration, declaratory relief and breach of duty of good faith and fair dealing. It alleged Heller represented it would continue to finance Alpha if Tecrim would subordinate its security interest to Heller's interest when it had no intention of doing so and did not continue or refused to continue financing Alpha. It further sought rescission of the subordination agreement on the basis of this alleged fraud and for the mistaken belief Heller would continue to finance Alpha as well as for failure of consideration because Heller did not continue to finance Alpha for any significant period of time. It further alleged Heller acted with a reckless disregard for its welfare and with a malicious intent to cause it economic damage thus breaching its duty to act fairly and in good faith in its dealings with Tecrim.

Heller moved for summary adjudication of issues (Code Civ. Proc., § 437c). The matter was heard by Judge John L. Cole on July 24, 1984, who determined there was no triable issue of material fact regarding the following issues: Heller and Tecrim had entered into a subordination agreement on November 18, 1981, which determined the relative priority of each party's security interest in certain of Alpha's assets; the subordination agreement provided that any security interest Tecrim might have in Alpha's assets would be subordinate to any security interest of Heller in the inventory collateral with the exception of cold rolled steel which had not been entered into the manufacturing process; and Heller had continued to finance Alpha for at least four months after the subordination agreement had been entered into by Heller and Tecrim. Judge Cole found the following issue was *not* suitable for summary adjudication on the basis the introductory language of the subordination agreement and paragraph five were in tension and denied the motion as to it: "(3) Heller did not promise to continue financing Alpha, and any evidence to the contrary to be offered by Tecrim is barred by the Parol Evidence Rule; . . . ."

The subordination agreement recited the following in its introductory paragraph: "In order to induce you [Heller] to extend or continue to extend financing to the above-named debtor (the 'Debtor' [Alpha]), the undersigned [Tecrim] hereby agrees as follows: . . . ." Paragraph five stated in pertinent part: "It is understood and agreed that this Agreement shall in no way be construed as a commitment or agreement by you to continue financing arrangements with the Debtor and that you may terminate such arrangement at any time. . . ."

Heller subsequently moved for summary judgment on its first two causes of action, Tecrim's affirmative defenses and cross-complaint. The matter was heard by Judge Robert H. O'Brien who granted the summary judgment except for denying attorneys fees incurred in bankruptcy court. The court found consideration for the subordination agreement was Heller's forbearance from declaring Alpha in default in their financial arrangements and its promise to continue financing Alpha. It further stated: "All of defendant's defenses and defendant's cross-complaint causes of action fall after this finding that the subordination agreement is a viable contract supported by adequate consideration." ■ ■■■ ■ Judgment was entered and Tecrim appealed.[1]

## DISCUSSION

### I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE PAROL EVIDENCE WAS ADMISSIBLE TO AID IN INTERPRETING THE SUBORDINATION AGREEMENT.

Tecrim contends the trial court erred in ruling the subordination agreement was supported by consideration. We agree.

### A. *The Trial Court Erred in Finding the Subordination Agreement Was Supported by Consideration Because It Decided the Factual Issue.*

The principles of summary judgment are well settled. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)[2] The trial court must determine whether either party

---

[1] As a preliminary matter we note this appeal is not precluded by the one-final-judgment rule. (See *U. S. Financial* v. *Sullivan* (1974) 37 Cal.App.3d 5, 11 [112 Cal.Rptr. 18].) Although Heller alleged causes of action for conversion, breach of contract, fraud, interference with contract, and breach of duty of good faith and fair dealing, it declared to the trial court it would abandon its other causes of action if a judgment were entered in its favor on the motion for summary judgment and Tecrim's cross-complaint were dismissed. Accordingly, we deem Heller has waived its other causes of action.

In addition this appeal is not moot even though the judgment was satisfied. The parties stipulated appellant would pay Heller the full amount of judgment within a 30-day period during which it would prosecute its appeal while Heller refrained from executing on the judgment. It was further agreed the payment would be made without prejudice to appellant's right to prosecute an appeal. Since the payment was not by way of compromise or agreement not to appeal, satisfaction of the judgment does not preclude Tecrim's appeal. (*Vaughn* v. *DeKreek* (1969) 2 Cal.App.3d 671, 680 [83 Cal.Rptr. 144] and cases cited therein.)

[2] Under section 437c, subdivision (c) (Code Civ. Proc.) the trial court is directed to consider all "evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deduci-

has presented facts which give rise to a triable issue. (*Ibid.*) It can grant a summary judgment "only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue." (*Ibid.*)

We are cautioned summary judgment is a drastic procedure which should "not become a substitute for the open trial method of determining facts." (*Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d at p. 417.) ■ In reviewing the granting of a summary judgment we must make an independent determination of the construction and effect of the papers submitted to the trial court. (*Zuckerman* v. *Pacific Savings Bank* (1986) 187 Cal.App.3d 1394, 1400 [232 Cal.Rptr. 458].) We are directed to strictly construe the papers of the moving party and liberally construe those of the opponent, and any "doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d at p. 417.) Further, we must accept as true the facts alleged in affidavits by the party against whom the summary judgment is rendered. (*Zeilman* v. *County of Kern* (1985) 168 Cal.App.3d 1174, 1179, fn. 3 [214 Cal.Rptr. 746].) "Thus, if on a motion for summary judgment a single issue of fact is found, the trial court may not proceed but must allow such issue to be tried." (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 284 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].)

■ In support of its motion for summary judgment Heller filed a declaration by Gilbert Burrus who stated he was the vice-president at Heller responsible for matters relating to financing Alpha. He declared Heller and Alpha entered into a written inventory loan security agreement on October 25, 1977, in which "Alpha granted Heller a security interest in, among other things, all of the inventory then owned, or thereafter acquired, by Alpha." He further stated Tecrim removed finished goods inventory from Alpha on approximately February 1979, and Alpha filed a petition in bankruptcy about April 1982.

Neal Thompson, attorney for Tecrim, stated in his deposition he spoke to one of Heller's attorneys about the proposed subordination agreement. Thompson recalled he stated: " 'Well, it's my understanding that Heller will not advance any more money to Alpha unless we agree to subordinate our position.' And Mr. Levy—if that's who I was speaking with—I'm rather sure it was—said, 'Yes. That's correct.' And I then said, 'Then I take it that if we do agree to subordinate, that Heller will continue financing Alpha.'

ble from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact."

And he said, 'Yeah. That's right,' or words to that effect." Thompson also stated he had reviewed the subordination agreement and had made minor changes on page one. Although he had read the whole agreement, Thompson stated he did not notice anything unusual about paragraph five. He also said they did not discuss a definite term for Heller to finance Alpha.

Dennis Hill, the chief financial officer at Tecrim, stated at his deposition Alpha and Tecrim entered into a consignment agreement for steel coils and explained the particulars of the arrangement. Alpha could draw steel coils from the consigned inventory not to exceed $350,000 in value at any one time. Tecrim was to have received a consignment agreement, a security interest in the consignment agreement and a Uniform Commercial Code filing. However, he stated Tecrim's attorney advised him Heller was requesting a subordination agreement after it received notification of the arrangement between Tecrim and Alpha. Tecrim's attorney further indicated Heller would not continue financing Alpha unless Tecrim entered into the subordination agreement. At the time the consignment arrangement ended Alpha owed Tecrim approximately $1.2 million. Hill further stated it was subsequently decided Alpha would deliver to Tecrim finished goods inventory valued at approximately $460,000 in late February 1982, which would be credited against the obligation Alpha owed Tecrim.

Michael Wilkinson, Tecrim's chief executive officer, stated at his deposition he understood Heller would continue to finance Alpha only if Tecrim entered into a subordination agreement with Heller. Wilkinson stated he was later made aware Alpha was having "severe liquidity problems." He also knew Heller was financing Alpha and presumed the arrangement "would be a typical advance against receivables and inventory and equipment and that would be an ongoing situation." He had not thought the arrangement would be continued for any definite time and presumed Heller could discontinue the arrangement at any time.

The gravamen of Tecrim's answer and cross-complaint is that it entered into the subordination agreement with Heller in consideration of and in reliance upon Heller's representation it would continue to finance Alpha. Tecrim disputed Heller's claim that consideration for the subordination agreement was, among other things, its promise to forbear from declaring Alpha in default under the inventory loan security agreement. Tecrim thus placed squarely at issue what constituted consideration for the subordination agreement.

The introductory recital and paragraph five are inconsistent and render unclear what constituted consideration in the subordination agreement. ■ When any of the terms or provisions in a contract are ambiguous or uncertain, it is the duty of the trial court to construe it after the parties are given a full opportunity to produce evidence of the facts, circumstances and conditions surrounding its execution as well as the conduct of the parties to the contract. (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 443 [116 P.2d 62].)

■ When two equally plausible interpretations of the language of a contract may be made, as in our case, parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory. (*Id.*, at p. 444; *Travelers Indemnity Co.* v. *McIntosh* (1952) 112 Cal.App.2d 177, 181 [245 P.2d 1065]; *Loree* v. *Robert F. Driver Co.* (1978) 87 Cal.App.3d 1032, 1039-1040 [151 Cal.Rptr. 557].) Moreover, "[t]he foregoing of a legal right constitutes a consideration for the contract if the minds of the parties meet on the relinquishment of the right as a consideration." (*World Sav. & Loan Assn.* v. *Kurtz Co.* (1960) 183 Cal.App.2d 319, 327 [6 Cal.Rptr. 665].) Heller's moving papers do not provide uncontroverted evidence the two parties mutually understood and agreed consideration for the subordination agreement would be Heller's forbearance from declaring Alpha in default of the inventory security loan agreement.

Nor does the record support Heller's contention that Tecrim's admissions foreclosed any triable issue of fact regarding whether Heller promised to continue financing Alpha. Even though Tecrim's attorney (Thompson) stated no definite term for the subordination agreement was discussed, he also said it was his understanding Heller would continue financing Alpha if Tecrim entered into the agreement. Similarly there is conflicting testimony by Tecrim's chief executive officer and its chief financial officer. Although Tecrim's chief executive officer (Wilkinson) did not specifically state it was his understanding Heller would continue financing Alpha, the chief financial officer (Hill) stated in his declaration that Tecrim agreed to subordinate its superior security interest in exchange for Heller's commitment to finance Alpha. Any conflicts in evidence in the papers submitted in support and opposition to the summary judgment are to be resolved in favor of the nonmoving party. (*Klekas* v. *EMI Films, Inc.* (1984) 150 Cal.App.3d 1102, 1106 [198 Cal.Rptr. 296].) We conclude the trial court made a factual determination when it decided what constituted the consideration for the subordination agreement. The trial court in ruling on a summary judgment "may not decide the factual issue itself." (*Blair* v. *Pitchess, supra,* 5 Cal.3d at p. 284.)

B. *The Trial Court Erred When It Determined There Was Adequate Consideration.*

Tecrim contends in part the trial court impliedly addressed and decided the issue of the adequacy of consideration for the subordination agreement in light of conflicting evidence Heller had continued to finance Alpha. It observes the trial court necessarily had to weigh the evidence to make this determination which is not within its province when deciding a motion for summary judgment. We agree.

Before the trial court was a declaration by Alpha's former secretary/treasurer (Facciani) who stated advances by Heller on accounts it deemed eligible under the accounts financing security agreement between Alpha and Heller, were more than offset by payments from Alpha to Heller, made at Heller's demand to reduce Alpha's loan balance. He further declared Alpha had reached its borrowing limit on the inventory loan one year before Alpha sold inventory to Tecrim. Tecrim's controller (Alcorn) stated in his declaration he had reviewed the loan activity list between Alpha and Heller which indicated from June 1981, through April 1982, Alpha's payments to Heller exceeded Heller's advances to Alpha under the secured accounts receivable loan by approximately $2.8 million. His review of the loan activity relating to the secured inventory loan disclosed Heller's last advance to Alpha was February 24, 1981, for $350,000. Heller's vice president in charge of matters relating to financing Alpha (Burrus) stated in his supplemental declaration Heller advanced $3,280,258.92 to Alpha from November 18, 1981, through April 8, 1982.

We agree with Tecrim this evidence raises a question of fact regarding what constituted "financing" under the subordination agreement. Further, we find no merit in Heller's contention its administration of the Alpha loans, specifically how much it advanced or collected after the subordination agreement, is outside the scope of the pleadings. It is pertinent both to the question of the adequacy of consideration and to the allegations of fraud made in the cross-complaint.

At a prior proceeding, Heller's motion for summary adjudication was granted on the issue Heller had continued to finance Alpha for at least four months after the parties entered into the subordination agreement. Since the subordination agreement did not specify the time of performance, then a reasonable time is allowed. (Civ. Code, § 1657). What constitutes reasonable time for performance of a contract is a question of fact. (*Sawday* v.

*Vista Irrigation Dist.* (1966) 64 Cal.2d 833, 836 [52 Cal.Rptr. 1, 415 P.2d 816].) When the trial court determined there was adequate consideration it implicitly resolved any conflict in the evidence regarding whether the actual financing supplied constituted adequate consideration under the agreement. Similarly the trial court necessarily determined Heller financed Alpha for a reasonable time under the contract. Yet, it is a factual question whether a period of four months was reasonable under this agreement.

## II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE HELLER DID NOT MEET ITS BURDEN OF PROOF. TECRIM'S CROSS-COMPLAINT DID NOT RAISE A TRIABLE ISSUE OF MATERIAL FACT.

 Tecrim contends the cross-complaint raises triable issues of material fact which the trial court either ignored or improperly resolved in favor of Heller when it found the subordination agreement was supported by consideration. We agree.

Even if the trial court did not err in finding the subordination agreement to be supported by consideration, additional triable issues of fact arise from Tecrim's cross-complaint. "A party cannot succeed [on motion for summary judgment] without disproving even those claims on which the opponent would have the burden of proof at trial [citations omitted]." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1065 [225 Cal.Rptr. 203].)

 Tecrim alleged it relied on Heller's promise to continue financing Alpha if it would enter into a subordination agreement with Heller. Tecrim alleged Heller concealed with intent to defraud Tecrim into entering the agreement that it knew it had to continue financing Alpha in order for Tecrim to be paid; knew Alpha had reached its maximum credit limit on the inventory loan; knew it would not advance Alpha further funds pursuant to the loan; knew it had previously denied Alpha's request to increase its limit on the loan; and knew Alpha was being required to pay back more money to Heller than it was being advanced.

 Actual fraud occurs when a party to the contract intends to deceive another party to the contract or to induce another party to enter into the contract on the basis of a promise made without any intention of performing it or any other deceitful act. (See Civ. Code, § 1572, subds. 4 & 5; *Benson* v. *Hamilton* (1932) 126 Cal.App. 331, 334 [14 P.2d 876].) The

essence of actual fraud is "the existence of an intent at the time of the promise not to perform it [italics deleted]" which is always a question of fact. (*Id.,* at p. 334; Civ. Code, § 1574.)

In its opposition Tecrim presented evidence which supports an inference of fraud. The chief financial officer of Tecrim stated in his declaration Tecrim subordinated its superior security interest in Alpha's finished inventory to Heller's junior interest because it had received assurances from Heller it would continue to finance Alpha. He declared had Heller disclosed to Tecrim Alpha had borrowed the maximum amount available to it under the inventory loan and Alpha's payments under the accounts receivable loan substantially exceeded the amounts being advanced by Heller, Tecrim would not have agreed to subordinate its security interest. Alpha's former secretary/treasurer stated in his declaration Heller's liberal approach to what constituted an eligible account under the accounts financing security agreement in which Heller had agreed to advance (loan) money to Alpha changed drastically on or about September or October 1981. Consequently Heller began to demand more money from Alpha than it was advancing to Alpha and Alpha was unable to fully pay its operation expenses and creditors.

Tecrim also cross-complained for rescission of contract based on mistake. (Civ. Code, § 1689, subd. (1).) It alleged it labored under a material mistake of fact entitling it to rescission if Heller were not required to finance Alpha in such a manner to allow Alpha to pay its operating expenses and fully pay its creditors. Tecrim's chief financial officer stated in his declaration Tecrim would not have entered into the subordination agreement if it had been fully informed of Alpha's financial situation. This evidence in opposition supports an inference Tecrim subordinated its security interest under the mistaken belief Heller would continue to finance Alpha as it had previously done.

Tecrim also alleged in its cross-complaint Heller breached its duty of good faith and fair dealing owed it as a result of the subordination agreement. ". . . [W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." (*Cal. Lettuce Growers* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496].) Tecrim's evidence in opposition also raises a material issue of fact regarding Heller's breach of duty of good faith and fair dealing resulting from Heller's administration of loan agreements between Alpha and Heller; Heller's failure to disclose to Tecrim it changed patterns

of financing Alpha; and Heller's claim to a security interest in goods in which it had not invested.

In light of the triable issues of fact discussed herein, we need not determine whether any issues remain regarding Tecrim's other causes of action in the cross-complaint.

## DISPOSITION

The judgment is reversed and the cause remanded. Pursuant to section 908 (Code Civ. Proc.), upon defendant's appropriate motion we direct the trial court to order restitution to defendant Tecrim of the amount paid by it to satisfy the judgment, restitution to be made by Heller on reasonable terms and conditions, pending retrial of the cause. (*Selby Constructors* v. *McCarthy* (1979) 91 Cal.App.3d 517, 527 [154 Cal.Rptr. 164].) Respondent's request for a hearing on the matter of restitution is denied.

Appellant to receive costs.

Lillie, P. J., and Thompson, J., concurred.