Filed 3/25/13  Lone Jack Ranch, LP v. Perkins CA4/1

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LONE JACK RANCH, LP, | D060995 |
| Plaintiff, Cross-Defendant and Respondent, | |
| v. | (Super. Ct. No. GIN053365) |
| VIRGINIA PERKINS, | |
| Defendant, Cross-Complainant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on March 1, 2013, be modified as follows:

1.  On page 14, the second sentence under the heading "Attorney Fees on Appeal" and its accompanying legal citation are deleted and replaced with:

> On remand the trial court shall determine the entitlement to and amount of contractual attorney fees.  (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1267.)

2.  On page 15, the first three sentences of the Disposition are deleted and replaced with:

> The judgment is reversed.  The case is remanded to the trial court for further proceedings in accordance with this opinion.  Perkins is entitled to costs on appeal.

There is no change in the judgment.

Lone Jack Ranch, LP's petition for rehearing is DENIED.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LONE JACK RANCH, LP, | D060995 |
|     Plaintiff, Cross-Defendant and Respondent, | |
|     v. | (Super. Ct. No. GIN053365) |
| VIRGINIA PERKINS, | |
|     Defendant, Cross-Complainant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County,

Timothy M. Casserly, Judge.  Reversed with directions.

This is a dispute between adjacent property owners, Lone Jack Ranch LP (the LP)

and Virginia Perkins.  The issue on appeal is whether the trial court misinterpreted a 1981

settlement agreement between the parties' predecessors in interest, which pertains to

Perkins's access to her property over a private road on the LP's property.  We find error

and reverse the judgment with directions.

FACTUAL AND PROCEDURAL BACKGROUND

Lone Jack Ranch consists of approximately 15.4 acres of land. Dr. Jeffrey Moses purchased the property in 1994 from Kenneth Liberty, and he later transferred ownership to the LP. The property is improved with a man-made lake and a home in which Dr. Moses and his family have lived.

In the 1950's Perkins's parents, Russell and Virginia S. Perkins (the Perkinses), purchased property that abuts Lone Jack Ranch to the north.[1] The property, called Perkins Ranch, included approximately 269 acres over parcels 1 through 6, and is undeveloped except for a house on parcel 1. For access to the property, the Perkinses used a private dirt road that traverses Lone Jack Ranch.

In the late 1970's the Perkinses sought to subdivide Perkins Ranch, and the provision of public access to the property was a prerequisite. The Perkinses sought to use a 40-foot-wide public road, RS 181, which the County of San Diego (the County) had previously designated and mapped out, but not constructed, to traverse Lone Jack Ranch. By that time, however, the man-made lake encroached on a portion of the alignment of RS 181. The Perkinses asserted a right to drain the lake for the construction of RS 181 and Liberty disagreed.

_____

1    As of 1982 Perkins's parents held the property in a family trust, but we continue to refer to the owners as the Perkinses. Likewise, for convenience we do not note the trusts of others involved.

In 1979 the Perkinses sued Liberty, the County, and the California Department of Fish and Game.[2] The parties entered into a settlement agreement that was recorded in August 1981 and binds successors in interest. Liberty agreed not to oppose the Perkinses' "efforts . . . to improve and utilize" RS 181, which the County was to realign to avoid the lake; to grant the Perkinses an easement over the newly aligned road; and to grant them and the County "all necessary temporary easements and rights of entry" necessary for the construction of RS 181.

As a prerequisite of recording a tentative subdivision map, the Perkinses were to make an irrevocable offer of dedication of RS 181 to the County. They were also to "maintain[ ] . . . the new alignment" of RS 181 until the County accepted the offer of dedication.

Two paragraphs of the 1981 settlement agreement pertain to the dirt road on Lone Jack Ranch. Paragraph 11 provides: "RUSSELL S. and VIRGINIA S. PERKINS and all members of their family agree to relinquish any prescriptive access rights which they may have acquired in the dirt road which currently transverses the LIBERTY property. The PERKINSES and all members of their family, . . . agree not to oppose any efforts by KENNETH LIBERTY to close, revegetate, or otherwise barricade said existing dirt road upon *completion of the new alignment* of RS181, it being understood that upon

---

2    We deny Perkins's request to take judicial notice of the Perkinses' first amended complaint as it was not before the trial court. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 737.)

implementation of this Settlement Agreement there shall be but one public roadway traversing the LIBERTY property, namely the new alignment of RS181." (Italics added.)

Paragraph 14 provides: "Upon demand, the PERKINSES shall quitclaim to KENNETH LIBERTY any and all interest they and their family may have in the dirt road which currently traverses the LIBERTY property, provided the PERKINSES shall not quitclaim any interest in such dirt road unless and until the new alignment of RS181 as herein described *is ready and available for access use* by the PERKINSES." (Italics added.)

Pursuant to the settlement agreement, in August 1981 Liberty caused a grant of easement over RS 181 in favor of the Perkinses to be recorded.[3] The grant permitted the Perkinses to irrevocably offer to dedicate the easement to the County "as part of the public road system." In turn, the Perkinses made an irrevocable offer of dedication of the easement to the County. In October 1981 a parcel map for a tentative subdivision map for Perkins Ranch was approved and recorded. In December 1981 the County drew the new alignment of RS 181 to go around the lake, and the County vacated the old alignment.

---

[3]    We grant the LP's unopposed request that we take judicial notice of an earlier version of this grant.

For reasons the record does not reveal, the Perkinses ultimately did not subdivide Perkins Ranch, and thus public access was not required and RS 181 was not constructed. They continued to use the dirt road on Lone Jack Ranch for access to their property, without any complaint by Liberty or his successors in interest, Dr. Moses and his LP.

By 2002 the Perkinses had both died and their children, Perkins, Stephen Perkins[4] and Georgia Havenstrite, inherited the property. In a 2005 partition action, the heirs entered into a settlement that awarded Perkins parcels 1 and 2, and awarded Stephen Perkins and Havenstrite each a 50 percent interest in parcels 3 through 6. Stephen Perkins and Havenstrite sold a portion of their property to David Resnick, and he transferred some of it to Estates Seven, LLC (Estates Seven). The Perkins Ranch owners all used the dirt road over Lone Jack Ranch to access their properties, initially without any objection.[5]

In 2006 a dispute arose between Dr. Moses and Perkins over her use of the dirt road. Perkins did not live on her property, but her daughter sometimes did, and Perkins visited the property and maintained it. Dr. Moses had fenced in his property and installed an electric front gate, at the south end of the dirt road, and a manual back gate, at the north end of the road, to keep domestic animals in and trespassers out. He provided

---

4    To avoid confusion we use the first and last names of Perkins's brother.

5    By this time Dr. Moses had paved a portion of the dirt road as a driveway to his house. Since the 1981 settlement agreement refers to a dirt road, however, we continue to use that designation for consistency.

Perkins with access codes to the front gate, and the combination to a padlock on the back gate. Perkins admittedly etched or drew the codes on the gates for her convenience and that of maintenance workers and other invitees, and she denied Dr. Moses's numerous requests to keep the codes private and the gates locked.

Ultimately, the LP sued Perkins and the other owners of Perkins Ranch. The operative second amended complaint (complaint) includes counts for declaratory relief, injunctive relief and indemnity. The complaint alleges the 1981 settlement agreement "is confusing" and "[o]bvious uncertainty abounds as to the scope of use, existence and the location of the easement rights held by the dominant estate [Perkins Ranch]." (Underlining and italics omitted.) The complaint conceded the Perkins Ranch owners had some type of access easement over Lone Jack Ranch.[6]

Perkins cross-complained against the LP for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief, and to quiet title. The cross-complaint alleges the LP breached the 1981 settlement agreement by erecting and locking gates that restrict her access to her property. It also alleges her parents and

---

[6] The LP's complaint alleged this was an easement by necessity. "An easement by way of necessity arises by operation of law when it is established that (1) there is a strict necessity for the right-of-way, as when the claimant's property is landlocked and (2) the dominant and servient tenements were under the same ownership at the time of the conveyance giving rise to the necessity." (*Moores v. Walsh* (1995) 38 Cal.App.4th 1046, 1049.) Lone Jack Ranch and Perkins Ranch, however, were not under common ownership. At trial, the LP argued the dirt road was not an easement by necessity, and on appeal the issue is not raised. The parties stipulated that Perkins could produce evidence "that her only presently usable road access to her property" was the dirt road, and the LP could produce evidence she "presently has usable road access to her property via means other than" the dirt road "including road access that she has used to access her property in the past."

successors had enjoyed a prescriptive easement through Lone Jack Ranch for several decades. The cross-complaint sought to "quiet title to her prescriptive easement[] rights of unfettered ingress and egress to her property" and damages for being locked out.

In 2009 the LP entered into a settlement with all defendants except Perkins. The settlement gives the settling defendants the right to continue using the dirt road, and the LP the right to erect electric gates or other access barriers on the road, provided that the settling defendants have access at all times through remote controls or keypad numbers.

Trial between the LP and Perkins began in October 2010. They agreed the court would first interpret the 1981 settlement agreement, and if necessary, a jury would then consider factual issues in Perkins's cross-complaint. The LP argued that under paragraph 11, as soon as the County drew the realignment for RS 181 in December 1981 the Perkinses automatically relinquished any prescriptive easement rights they may have had in the dirt road, and the LP was entitled to bar access; on the LP's demand Perkins was required to quitclaim any prescriptive easement rights she may have had in the dirt road; and the Perkinses' and their successors' use of the dirt road after December 1981 was pursuant to a license the LP could revoke at any time.

Perkins argued the 1981 settlement agreement was not intended to extinguish any prescriptive easement rights of the Perkinses or their successors over the dirt road unless RS 181 was actually constructed and the dirt road was no longer needed for access to Perkins Ranch. She also argued that since the agreement does not specify any time within which RS 181 had to be constructed, the passage of time has not affected her right

to that easement.  The LP conceded the settlement agreement gives Perkins a continuing right to construct a private easement in the RS 181 realignment at any time.

The trial court agreed with the LP's assessment and entered judgment for it.  The court denied Perkins any relief on her cross-complaint.

DISCUSSION

I

*Contract Interpretation*

Perkins contends the trial court misconstrued the 1981 settlement agreement, particularly by not considering and harmonizing its terms as a whole.  We agree with this assessment.

"Settlement agreements . . . are construed under the same rules that apply to any other contract."  (*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 47.)  "Interpretation of a contract, including resolution of any ambiguity, is solely a judicial function. [Citation.]  The primary goal of contract interpretation is to give effect to the mutual intent of the parties."  (*Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 598 (*Villacres*).)  When possible, we glean the parties' intent solely from the written provisions of the contract.  (*Ibid.*)  "Specific language must be interpreted in context and with regard to its intended function and the structure of the agreement as a whole." (*Ibid.*)  The interpretation of an unambiguous contract is a matter of law for this court's independent determination.  (*State Farm Fire & Casualty Co. v. Lewis* (1987) 191 Cal.App.3d 960, 963.)

8

The trial court relied on paragraph 11 of the 1981 settlement agreement, which provides: "RUSSELL S. and VIRGINIA S. PERKINS and all members of their family agree to relinquish any prescriptive access rights which they may have acquired in the dirt road which currently transverses the LIBERTY property.[7] The PERKINSES and all members of their family, their agents, employees, and anyone acting on their behalf agree not to oppose any efforts by KENNETH LIBERTY to close, revegetate, or otherwise barricade said existing dirt road upon *completion of the new alignment* of RS181, it being understood that upon implementation of this Settlement Agreement there shall be but one public roadway traversing the LIBERTY property, namely the new alignment of RS181." (Italics added.)

The court determined the italicized language of paragraph 11 cited above refers to the County's completion of the *drawing* for the realignment for RS 181, which occurred in December 1981, rather than to the completion of the road itself, which never occurred. Another portion of the settlement agreement, however, shows the parties used the term "new alignment of RS 181" to mean the completed road. Paragraph 8 provides: "The PERKINSES shall be responsible for the *maintenance of the new alignment of RS181,*

---

7        " 'A prescriptive easement in property may be acquired by open, notorious, continuous, adverse use, under claim of right, for a period of five years.' " (*Connolly v. Trabue* (2012) 204 Cal.App.4th 1154, 1162.) "A successful claimant of a prescriptive easement . . . gains not title but the right to make a specific *use* of someone else's property." (*Main Street Plaza v. Cartwright & Maine, LLC* (2011) 194 Cal.App.4th 1044, 1054.) "[C]ontinuous use of an easement over a long period of time without the landowner's interference is presumptive evidence of its existence." (*MacDonald Properties v. Bel-Air Country Club* (1977) 72 Cal.App.3d 693, 702.)

9

including its landscaping and drainage facilities . . ., until the irrevocable offer of dedication is made to the County and accepted. . . ." (Italics added.) The drawing for the realignment of RS 181, of course, would require no maintenance, whereas a completed road and environs would. We conclude the court's finding that the 1981 settlement agreement pertains solely to the drawing of the realignment, and not to actual construction of the road, is mistaken.

Moreover, we must read paragraph 11 in conjunction with paragraph 14, which provides: "Upon demand, the PERKINSES shall quitclaim to KENNETH LIBERTY any and all interest they and their family may have in the dirt road which currently traverses the LIBERTY property, provided the PERKINSES shall not quitclaim any interest in such dirt road unless and until the new alignment of RS181 as herein described is *ready and available for access use* by the PERKINSES." (Italics added.) This paragraph is not reasonably interpreted to mean the mere *drawing* for the realigned RS 181 was the relevant trigger, because a drawing could not provide the Perkinses with access to their property. We reject the notion the contracting parties intended that the term "ready and available for access use" meant the newly drawn realignment of RS 181 was available to begin the lengthy, and speculative, permitting and construction process.

The LP acknowledges that when the 1981 settlement agreement was reached "it was unknown . . . when (or if) the newly aligned RS181 might be built-out [*sic*]." The agreement did not require the Perkinses to construct the road. Rather, paragraph 1 required Liberty "not to oppose efforts" by the Perkinses to improve RS 181. Indeed, the Perkinses could not ensure RS 181 would be constructed because the County controlled

10

the matter. It is clear from the settlement agreement that the Perkinses' interest in developing RS 181 was to provide public access to an anticipated subdivision of their property, not an expensive private access should the development not occur.[8]

Under the LP's interpretation, the contracting parties intended that even if RS 181 was not constructed, the Perkinses would lose *any* right of access over Lone Jack Ranch after the realignment of RS 181 was drawn unless Liberty later voluntarily granted them a license to continue using the dirt road. In our view this theory defies common sense. Liberty and the Perkinses were unable to resolve their differences without litigation, and it is unlikely the Perkinses would have expected or relied on Liberty's largesse. Even if initially granted, a license is revocable at will, and thus Liberty would unilaterally control their access.[9]

---

[8] The parties stipulated that Perkins could produce evidence that in December 1981 when RS 181 was realigned on paper, it would have taken between two to four years to construct a graded and paved road at a cost of approximately $1 million. The parties also agree the County no longer plans to construct RS 181 on Lone Jack Ranch as a public thoroughfare.

[9] "Prescription cannot be gained if the use is permissive." (12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Estate, § 404, p. 474.) "A licensee has express or implied authority from the owner to perform an act or acts upon property. Like an easement, it is an interest in property which is less than an estate. [Citation.] A primary distinction is that a license is normally revocable at will." (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 36.)

The LP's complaint alleges numerous times that the settlement agreement is unclear and confusing. " 'Contractual language is ambiguous if it is susceptible to more than one reasonable interpretation in the context of the [contract] as a whole.' [Citation.] " 'In determining whether an ambiguity exists, a court should consider not only the face of the contract but also any extrinsic evidence that supports a reasonable interpretation.' " (*Villacres*, *supra*, 189 Cal.App.4th at p. 598.) "If a contract is capable of two constructions courts are bound to give such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if that can be done without violating the intention of the parties." (*Rodriguez v. Barnett* (1959) 52 Cal.2d 154, 160.) When parol evidence is not in conflict, as here, we independently construe it. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166.)

The LP and Perkins stipulated to the introduction of extrinsic evidence, including the contracting parties' course of conduct after the 1981 settlement agreement was executed. The stipulation states, "Liberty permitted the members of the Perkins family to use the [dirt road], without incident, after the 1981 Settlement Agreement until Lone Jack Ranch was sold to Dr. Moses. [The LP] and Dr. Moses permitted the members of the Perkins family to use the [dirt road], without incident, until 2006."

The parties' course of performance during the contract term is strong evidence of their intent at the time of contracting. " 'The rationale for the admission of course of performance evidence is a practical one. "[W]hen a contract *is ambiguous,* a construction given to it by the acts and conduct of the parties with knowledge of its terms, before any

12

controversy has arisen as to its meaning, is entitled to great weight, and will, when reasonable, be adopted and enforced by the court. [Citation.] The reason underlying the rule is that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract and a practical construction placed by the parties upon the instrument is the best evidence of their intention." ' " (*In re Tobacco Cases I*, *supra*, 186 Cal.App.4th at p. 52.) Had the contracting parties intended that the Perkinses relinquish any prescriptive easement rights in the dirt road when the realignment of RS 181 was merely drawn, it is unlikely that Liberty would have allowed them to continue using the dirt road without any objection, through the supposed vehicle of a revocable license.

The LP now asserts the 1981 settlement agreement is unambiguous and the plain language of paragraph 11 supports the court's ruling. We need not determine whether the agreement is ambiguous, however, because we disagree with the court's ruling under any analysis. Whether or not we consider the extrinsic evidence, the agreement is not reasonably interpreted to deprive the Perkinses, or their successors, of any prescriptive rights in the dirt road over Lone Jack Ranch on the mere drawing of the realignment of RS 181.

The 1981 settlement agreement did not determine whether the Perkinses, or their successors, actually had prescriptive rights of access over the dirt road. Thus, that issue and other unaddressed issues raised by the complaint and cross-complaint remain outstanding.[10]

## II

### *Attorney Fees on Appeal*

The 1981 settlement agreement gives the prevailing party the right to attorney fees, and both the LP and Perkins seek fees on appeal.[11] We agree that Perkins is entitled to fees as the prevailing party on appeal, and on remand the trial court shall determine the fees she reasonably incurred. (*Silver Creek, LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533, 1541.)

---

[10] Given our holding, we are not required to address Perkins's contention the LP's action is untimely. We asked the parties for supplemental briefing on the issue of whether the 1981 settlement agreement gives Perkins the perpetual right to an easement over RS 181 even though it has not been developed in more than 30 years. Normally, when a contract does not specify a time for performance, the law implies a reasonable time. (Civ. Code, § 1657; *Walter E. Heller Western, Inc. v. Tecrim Corp.* (1987) 196 Cal.App.3d 149, 159-160.) The LP's complaint alleged, "Lone Jack Ranch has been surcharged in that it has been required to *remain at the ready to accommodate a public road way* for the dominant estate and also provide the temporary dirt road easement for some 26 years." (Italics added.) The LP, however, now states it "does not seek to prevent Perkins from building out the realigned RS181." To any extent the issue is germane during retrial, it may be revisited.

[11] The judgment states the LP was to bring a post-trial motion for attorney fees. According to the LP it brought a motion and obtained fees. Perkins, however, did appeal the award.

DISPOSITION

The judgment is reversed and Perkins's request for attorney fees on appeal is granted. The case is remanded to the trial court for further proceedings in accordance with this opinion and to determine the reasonable fees Perkins incurred in litigating her appeal. Perkins is also otherwise awarded her costs on appeal. The stay issued June 14, 2012, is vacated.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

McDONALD, J.

15