Filed 4/3/25  Truglio v. Chutter CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NANCY TRUGLIO, | B326254 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV06718) |
| v. | |
| CHUTTER INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge.  Reversed and remanded in part; affirmed in part.

Lewitt, Hackman, Shapiro, Marshall & Harlan, and Jessica W. Rosen, for Plaintiff and Appellant.

Ellis George, Eric M. George, and David J. Carroll, for Defendants and Respondents.

Plaintiff Nancy Truglio appeals from summary judgment entered in favor of Sonja Perencevic and Chutter, Inc. (Chutter) (collectively, defendants) on plaintiff's complaint to invalidate an amendment to a commercial lease agreement entered into by her late father, Ralph Truglio (Ralph), with lessee Chutter. Plaintiff contends the trial court abused its discretion by excluding some of her evidence and denying her discovery motions. She further argues there are triable issues of material fact regarding whether the lease amendment provided for future rent increases. She thus asserts the trial court erred in granting summary judgment as to her causes of action for financial elder abuse, rescission, unconscionability, and declaratory relief.

We affirm the trial court's order denying plaintiff's discovery motions. As to summary judgment, we conclude there are triable issues of material fact as to whether the parties agreed to future rent increases. Because this contract term is critical to evaluating plaintiff's claims for elder financial abuse, rescission, unconscionability, and declaratory relief, we reverse the summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Chutter's Lease Agreement and Extensions*

Effective January 1, 1964, Chutter, through its then-owner, Dan Tana, leased a commercial restaurant space from Domenico and Teresa Boggio and opened Dan Tana's restaurant (the restaurant). In the 1970s, the Boggios transferred the property to Ralph's aunt, who in turn passed it to Ralph, who held it through his family's trust. Ralph began signing amendments to the lease in 1986. In 2009, Dan Tana sold Chutter to defendant Perencevic.

2

The initial 1964 lease was for a term of five years, with an option to extend for an additional five years. The lease provided that in addition to paying rent, Chutter would be responsible for maintaining the premises and making repairs as needed; making any alterations required by law; paying utilities, real estate taxes, and assessments on the property; and maintaining fire and liability insurance. The original lease was amended numerous times, and subsequent amendments provided options for successive five-year extensions of the original lease term.

The most recent amendment not in dispute was executed in October 2010. That amendment extended the lease until the end of 2023 and set the monthly rent at $7,000 in 2010, increasing to $8,000 from 2013 to 2018, and $9,000 from 2018 to 2023. It also granted two additional five-year options, raising the rent to $11,000 per month from 2023 to 2028 and $13,000 per month from 2028 to 2033.

In 2017, Perencevic began considering making renovations to the restaurant, including significant upgrades to the kitchen. These renovations were partly prompted by a recommendation from West Hollywood's Health Department that the kitchen's electrical systems be physically separated from the plumbing, necessitating the relocation of sinks and the walk-in freezer, as well as the rerouting of gas and water lines. Additional planned upgrades included expanding the kitchen and updating equipment such as the walk-in refrigerator and freezer, stoves, fryer, and sinks. Perencevic estimated the work would cost at least $200,000, but possibly as much as $500,000.

Considering the cost of the remodel, Perencevic contacted Ralph in October 2017 to propose extending the lease beyond 2033. At the time, Ralph was 95 years old. Ralph asked

Perencevic to prepare a lease extension, which she did. In October 2017, Perencevic, accompanied by her office manager and Dan Tana, met Ralph over lunch at the restaurant. During that one-hour lunch, in the presence of the office manager and Dan Tana, Perencevic and Ralph signed the 2017 Amendment, which was furnished by Perencevic.

The 2017 Amendment is a single-page, four-paragraph document. The first two paragraphs extended the lease to December 8, 2063, and provided that the amendment would bind the parties' successors. The third paragraph stated that "the Lease and all Amendments thereto shall remain in full force and effect, and in the event of a conflict between the Lease and the Amendments thereto and this Amendment, this Amendment shall govern." The fourth and final paragraph contained a merger clause, stating: "This Amendment contains all of the agreements of the parties hereto with respect to the matters contained herein, and no prior agreement, arrangement or understanding pertaining to any such matters shall be effective for any purpose. Nothing in this Amendment shall be deemed to waive or modify any provisions of the Lease except as expressly stated herein." The 2017 Amendment varied from the parties' prior practice in that it provided for a single 30-year extension, rather than a series of options for five-year extensions. Most significantly, the document failed to address rent increases during the extended lease period.

In March 2018, Ralph suffered a heart attack. He was hospitalized and later moved to a rehabilitation facility. In April 2018, Ralph transferred control of the family trust, the lessor of the restaurant, to his daughter, plaintiff Truglio. Ralph died in January 2019. When plaintiff could not locate the lease among

4

Ralph's possessions, she requested and received a copy of the lease documents from Chutter. Plaintiff provided the lease documents to her attorney, who was alarmed by the 2017 Amendment's lack of a rent increase provision.

In October 2020, plaintiff's attorney wrote to Perencevic's counsel, threatening litigation unless the parties met to "seriously discuss and work on a resolution of . . . issues" relating to the 2017 Amendment. The following month, the parties and their counsel met. Plaintiff's attorney brought a draft complaint and threatened to file suit unless Chutter agreed to either rescind the 2017 Amendment or pay "fair market" rent after 2033. Chutter refused to do either.

***The Lawsuit***

On February 19, 2021, plaintiff filed this action against Chutter and Perencevic. As relevant here, her complaint alleged four causes of action: (1) financial elder abuse in violation of Welfare and Institutions Code section 15610.30, subdivision (b); (2) rescission of the 2017 Amendment based on fraud, duress, undue influence or menace; (3) unconscionability; and (4) declaratory relief to the effect that the 2017 Amendment is void.[1] Each cause of action had a common factual predicate— namely, that the 2017 Amendment did not contain a provision for increasing rent.

During discovery, plaintiff propounded "Interrogatory No. 50.1," which asked defendants to identify all the documents that are part of the agreement at issue in the case, i.e. the lease and any modifications to it. Subparts (b) and (e) of the

_____

[1] Plaintiff concedes that her fifth and final cause of action for declaratory relief related to withholding rent is no longer at issue, so we do not address it.

5

interrogatory respectively prompted defendants to "state each part of the agreement not in writing" and "state each modification not in writing." In their October 2021 verified response to Interrogatory No. 50.1, defendants identified "October 2017 Amendment to the Lease (Plaintiffs' Complaint Exhibit B)" as the agreement at issue in the case. In response to subparts (b) and (e), defendants responded "none," meaning that all of the agreement and any modifications to it were in writing.

However, seven months later, Perencevic testified at her deposition that she and Ralph orally agreed to increase the monthly rent by $2,000 every five years. According to Perencevic, who provided the only testimony on this issue, Ralph suggested that the lease extend through 2063 and that rent increases follow the same pattern as agreed upon in the 2010 lease extension—a $2,000 increase every five years.[2]

During discovery, plaintiff also sought information relating to Chutter's gross income, sales revenues, and profits from operating the restaurant. Defendants objected that the requests were overbroad, burdensome, and not relevant. Eventually, plaintiff moved to compel responses, and defendants opposed the motions, arguing the discovery requests improperly sought information about Chutter's financial condition in violation of Civil Code section 3295.[3] The court denied plaintiff's motions,

---

[2]     We note the 2010 Amendment's rent increases did not follow straightforward $2,000 increments. The 2010 agreement increased monthly rent in $1,000 increments in 2013 and 2018, and in $2,000 increments in 2023 and 2028.

[3]     All further undesignated statutory references are to the Civil Code.

6

finding that plaintiff sought financial information without first seeking leave from the court pursuant to section 3295. The court also concluded that, contrary to plaintiff's assertions, the requested information was not relevant to plaintiff's unconscionability cause of action.

***Motion for Summary Judgment***

In June 2022, defendants filed their motion for summary judgment. Based on Perencevic's testimony, defendants asserted that "despite the lack of a written rent provision in the 2017 Amendment, the signatories had agreed that the rent for 2033–2063 would increase by $2,000/month every five years, continuing the same rent increase set by the last two options of the 2010 Amendment which covers 2023 to 2033." Defendants argued that plaintiff could not prove financial elder abuse because defendants acted in good faith when they orally agreed to the rent increases and since Ralph was competent when he entered into the amendment. Defendants produced evidence that at the time he signed the 2017 Amendment, Ralph was still driving, he continued to own and manage the rental property, and his health records did not indicate that he had cognitive impairments. Defendants asserted the 2017 Amendment was neither unfair nor unconscionable because Chutter was making a major financial investment by improving the restaurant, which justified extending the lease term, and because the lease amendment provided for monthly rent increases of $2,000 every five years during the extension.

Plaintiff opposed the motion, arguing that the 2017 Amendment did not provide for rent increases after 2033 (the end of the final rent increase period established by the 2010 Amendment). Plaintiff contended rent increases were not

included in the 2017 Amendment and Perencevic's prior statements contradicted her current claim of $2,000 monthly rent increases every five years.  Plaintiff attached a declaration from Zane Averbach, an attorney who appeared with and on behalf of plaintiff during the 2020 meeting with Perencevic to discuss the 2017 Amendment.  In that declaration, Averbach asserted that at the 2020 meeting, "Perencevic insisted the Lease amendment provided for no rent increase" and that she claimed to have told Ralph "there should be no rent increase because she would have substantial expense to refurbish the restaurant."  Plaintiff also furnished a copy of defendants' October 2021 response to interrogatories, in which defendants attested that all modifications to the lease agreement were in writing.

Plaintiff pointed out that it was not until Perencevic's May 2022 deposition that she claimed there was an oral agreement regarding the rent increases.  Plaintiff further argued that Perencevic's version of events was not credible because it would require the parties to honor an unwritten rent increase set to begin 17 years in the future and last 30 years thereafter, to 2063, a timeline that far exceeded the life expectancies of all parties involved:  Ralph (then age 95 when he signed the amendment), plaintiff (then age 65), and Perencevic (then age 68).

Plaintiff also argued that Ralph lacked capacity when he entered into the amendment, Perencevic exerted undue influence over Ralph, and defendants harmed Ralph through the transaction.  The opposition was supported by declarations of real estate professional John Gebhardt and psychiatrist Sarah Mourra, M.D.  Gebhardt opined that the 2017 Amendment was in effect an encumbrance on title to the restaurant property and that its terms were so unfairly slanted in Chutter's favor that he

8

could discern no business justification for Ralph's agreement to it. Mourra opined that "[t]he facts [in] this case strongly suggest" Ralph lacked the capacity to understand and agree to the 2017 Amendment. She attested that firsthand accounts from Ralph's friends and Ralph's medical records showed that Ralph "exhibited conditions consistent with suffering significant memory issues and mental decline consistent with dementia."

In replying to plaintiff's opposition, defendants objected to Gebhardt's and Mourra's declarations as speculative, opining on matters not properly subject to expert opinion, and not based on the declarant's specialized knowledge, skill, experience, or training. Defendants also provided a declaration of Stephen Mihaly, an attorney who represented Chutter at the November 2020 meeting. In his declaration, Mihaly disputed Averbach's description of Perencevic's statements regarding any future rent increases during the extension period. Mihaly attested: "At no time during the meeting did Ms. Perencevic take the position that there would be *zero* rent increases for the new lease term of 2033–2063. Ms. Perencevic stated that the rent increase was based on the previous amendment." In response to Averbach's demands that defendants either cancel the extension period or change the terms of the 2017 Amendment to set rent at the fair market value, "Perencevic explained that rent at fair market value was not what was agreed upon by her and [Ralph]." According to Mihaly, Perencevic "explained that fair market value did not make sense, because the building was old and the maintenance costs were already high" and "that she was in the process of making renovations to the kitchen, which would also be very costly, and that the refurbishment would increase the value of the property."

9

On September 15, 2022, the court heard oral argument from the parties and asked whether the 2017 Amendment was ambiguous. Plaintiff's counsel argued that, in light of plaintiff's evidence, a jury could disbelieve Perencevic's testimony that she and Ralph agreed to $2,000 monthly rent increases every five years. When plaintiff pointed out that Perencevic had taken the position at the 2020 meeting that the 2017 Amendment did not provide for rent increases, the court suggested those statements were inadmissible under Evidence Code section 1152 because they were made during settlement negotiations. The court ordered additional briefing on the ambiguity issue.

In their supplemental brief, defendants argued that because the 2017 Amendment stated the previous lease and all agreements thereto would remain in force and effect, it continued the parties' preexisting practice based on the 2010 Amendment of increasing monthly rent by $2,000 every five years. Defendants argued that plaintiff advanced no extrinsic evidence to resolve the ambiguity regarding rent increases and the court therefore could rely on Perencevic's testimony. Defendants also filed supplemental evidentiary objections to plaintiff's evidence, arguing Perencevic's statements at the 2020 meeting were inadmissible under Evidence Code section 1152.

In her supplemental brief, the plaintiff argued that the 2017 Amendment's silence on rent left several possible interpretations of what the agreement required in terms of rent: no rent at all; no increase beyond the last option ending in 2033; or a $2,000 monthly increase every five years as claimed by Perencevic. Plaintiff argued that Perencevic's testimony to an oral agreement regarding the rent was contradicted by (1) defendants' verified answer to Interrogatory No. 50.1;

10

(2) Perencevic's statement at the 2020 meeting with plaintiff that she and Ralph had agreed in November 2017 that there would be no rent increases; (3) the 2017 Amendment's failure to mention or reference an oral agreement; (4) the absence of contemporaneous documents evidencing an oral agreement; (5) Perencevic's total silence about an oral agreement until her 2022 deposition; and (6) real estate expert Gebhardt's statement that omission of the rent term was unusual.

On October 17, 2022, the trial court granted the summary judgment motion. The court sustained defendants' objections to attorney Averbach's declaration about Perencevic's statements at the 2020 meeting, and to the majority of Gebhardt's and Mourra's declarations.

The court concluded that "the 2017 [A]mendment merely extends the terms of the lease, is silent on rent between 2033 and 2063, and directs the parties back to the lease and prior amendments for all other terms. The 2010 amendment sets the rent up to 2033, but is silent on the issue of rent between 2033 and 2063. Therefore, the amendment at issue is ambiguous on the issue whether the rent is frozen at $13,000, until 2063, or whether the rent increases $2,000 per month during each five-year period."

The court then explained that it was required to consider extrinsic evidence to resolve the ambiguity. The court found that Perencevic's testimony that " 'Mr. Truglio said, he will have increase in the rent every five years for $2,000 like it was before' " was "corroborated by the pattern of rent increases referenced in the amendment of 2010, which increased the rent $2,000 per month during the third option period (December 31, 2023, to December 31, 2028) and $2,000 per month during the

11

fourth option period (December 31, 2028, to December 31, 2033)." The court concluded that plaintiff failed to "present admissible extrinsic evidence to dispute this account." Specifically, the court stated "Plaintiff attempts to rely on statements Perencevic allegedly made during settlement discussions (which, according to [her former attorney] Mihaly's declaration, she did not actually make). As discussed, these statements are inadmissible under Evidence Code section 1152. Second, Plaintiff attempts to rely on the declaration of John Gebhardt. This does not provide extrinsic evidence concerning the parties' mutual intention. Third, Plaintiff relies on Defendants' response to Form Interrogatory #50.1 . . . . This does not call into question Perencevic's account because she testified that she believed this issue was governed by the 2010 (written) amendment. . . . A discovery response must be clear and unequivocal to constitute an admission. [Citation.] Defendants' response is not."

The court found that plaintiff had failed to produce evidence raising a triable issue of material fact regarding any cause of action. The court entered judgment in defendants' favor, and plaintiff appealed.

## DISCUSSION

Among other arguments, plaintiff contends that the trial court erred in granting summary judgment because triable issues of material fact exist regarding whether the 2017 Amendment provided for rent increases. As explained below, we agree that conflicting extrinsic evidence created a factual dispute on this issue. Because the rent term of the 2017 Amendment is critical to deciding plaintiff's claims for financial elder abuse, rescission, unconscionability, and declaratory relief, the trial court erred in granting summary judgment. Since we reverse and remand, we

12

also address plaintiff's argument that the court erred in denying her discovery motions and conclude there was no abuse of discretion.

## I. Summary Judgment Standard of Review

"Summary judgment is designed to cut through the parties' pleadings to determine whether, despite their allegations, trial is necessary to resolve the dispute." (*Carver v. Volkswagen Group of America, Inc.* (2024) 107 Cal.App.5th 864, 876.) A motion for summary judgment shall be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if [the moving party] carries [the] burden of production, . . . the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "On appeal from the granting of a motion for summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

## II. Conflicting Extrinsic Evidence Raises a Question of Fact About the Rent Ambiguity in the 2017 Amendment

At issue on appeal are plaintiff's causes of action for financial elder abuse, rescission, unconscionability, and declaratory relief. The factual predicate for each of these causes

of action is that defendants wrongfully procured Ralph's agreement to a 46-year lease extension that did not include a provision for rent increases between 2033 and 2063. Plaintiff's financial elder abuse and recission causes of action stated: "Defendants knew or should have known that obtaining [Ralph]'s signature on the 2017 Amendment, which purports to extend the term of the lease for the Premises until December 8, 2063—that is an additional 46 years with no rent adjustment for the 30 years from 2033 to 2063—was likely to be harmful to [Ralph] and his interest in the Premises." Plaintiff's unconscionability cause of action alleged, "[t]he unconscionability includes but is not limited to each of: (i) duration, (ii) lack of a rent increase, and (iii) duration without rent increase." Plaintiff's declaratory relief cause of action incorporated these factual allegations and asserted the contract had no legal force or effect because it was unconscionable.

Defendants' motion for summary judgment argued that each of these causes of action failed because the 2017 Amendment included an oral agreement that monthly rent would increase by $2,000 every five years. In support, they relied on Perencevic's deposition testimony, which they contended was undisputed. Specifically, defendants asserted that plaintiff cannot prove financial elder abuse since there was no "wrongful use," "intent to defraud," or "undue influence" because the amendment was equitable and not harmful to Ralph as it included rent increases. (See Welf. & Inst. Code, § 15610.30, subd. (a)(l) [financial elder abuse occurs when a person/entity obtains elder's property for a wrongful use, with intent to defraud, or by undue influence].) Defendants contended that plaintiff could not obtain rescission because the oral agreement

14

regarding rent increases showed Ralph did not make a mistake of fact or law and that his consent was not obtained by duress, menace, fraud, or undue influence. (See § 1689, subd. (b) [a party may rescind if consent given by mistake, or obtained through duress, menace, fraud, or undue influence].) They further argued there was no procedural unconscionability because Ralph dictated that the rent provision be oral, and no substantive unconscionability existed since the parties orally agreed the rent would increase by $2,000 every five years—the highest rate agreed upon to date. Lastly, they asserted that plaintiff's declaratory relief claim incorporated the allegations of the three preceding claims for elder abuse, rescission, and unconscionability, and thus failed for the same reasons.

On appeal, plaintiff contends that, to the extent the 2017 Amendment is ambiguous, triable issues of material fact exist as to whether the parties agreed to rent increases. She asserts the extrinsic evidence was in conflict in part because (1) the written agreement did not include a rent term and (2) defendants' response to Interrogatory No. 50.1 indicated that the 2017 Amendment was the sole contract at issue in the case and that the entire agreement and all modifications thereto were in writing.

Evaluating whether there is an ambiguity "involves 'a two-step process: "First the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting

15

the contract. [Citation.]" (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) The trial court's determination of whether an ambiguity exists is a question of law, subject to independent review on appeal. (*Ibid.*) The trial court's resolution of an ambiguity is also a question of law if no parol evidence is admitted or if the parol evidence is not in conflict. However, where the parol evidence is in conflict, the trial court's resolution of that conflict is a question of fact . . . . [Citation.] Furthermore, "[w]hen two equally plausible interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the agreement, *thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory.*" (*Walter E. Heller Western, Inc. v. Tecrim Corp.* (1987) 196 Cal.App.3d 149, 158.)' " (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351, italics added.)

We therefore begin with the written 2017 Amendment, which was silent as to rent. The 2017 Amendment's third paragraph stated that "the Lease and all Amendments thereto shall remain in full force and effect, and in the event of a conflict between the Lease and the Amendments thereto and this Amendment, this Amendment shall govern." The reference to the continued force of the prior lease and amendments could suggest that, absent an express modification, existing terms—including the previously established pattern of rent increases—would remain operative, as defendants have suggested. It also could be interpreted to mean that rent increases would continue only as previously expressly specified, with the last scheduled increase

16

occurring in 2033 under the terms of the 2010 Amendment, after which no further increases would apply.[4]

In addition, the 2017 Amendment's fourth paragraph contained a merger clause that supports plaintiff's position that there was no provision for rent increases. The fourth paragraph stated: "This Amendment contains all of the agreements of the parties hereto with respect to the matters contained herein, and no prior agreement, arrangement or understanding pertaining to any such matters shall be effective for any purpose. Nothing in this Amendment shall be deemed to waive or modify any provisions of the Lease except as expressly stated herein." As the 2017 Amendment did not prescribe any rent increases for the extension period, the merger clause appears to render ineffective any oral agreement regarding increases. In light of the foregoing, we conclude that the 2017 Amendment's silence about rent and conflicting provisions created an ambiguity regarding rent increases.

We therefore turn to the parties' extrinsic evidence. Defendants presented Perencevic's deposition testimony that she

---

[4]     This interpretation is supported by the fact that the previous amendments had a similar provision, which stated the lease and previous amendments are "ratified and confirmed and remain[ ] in full force and effect." Nonetheless, the parties continued to negotiate amendments with rent increases at the end of the term identified in each amendment, indicating that the parties did not treat the mere reaffirmation of the lease and amendments as a guarantee that prior rent terms would automatically carry forward.

and Ralph orally agreed to increase monthly rent by $2,000 every five years.[5]

However, plaintiff proffered expressly contradictory evidence. Specifically, plaintiff produced defendants' response to "Interrogatory No. 50.1," served seven months before Perencevic's deposition. In their response, defendants represented that the 2017 Amendment was the sole contract at issue in the case and that the entire agreement, and all modifications, were in writing. This statement directly contradicts Perencevic's testimony about an oral agreement with Ralph. Perencevic's failure to mention an oral agreement until her 2022 deposition, despite this dispute beginning in early 2020, further bolsters plaintiff's theory that the alleged oral agreement is a fabrication.

Only in their supplemental briefing did defendants first argue that the 2017 Amendment's provision stating that the previous lease and agreements remained in force and effect encompassed an agreement on regular rent increases. Yet,

---

[5] On appeal, defendants contend that they never argued there was an *oral* agreement, but rather "that the rent increases were incorporated in the 2017 Amendment." Defendants mischaracterize the record. In their motion for summary judgment, defendants argued, "despite the lack of a written rent provision in the 2017 Amendment, the signatories had agreed that the rent for 2033–2063 would increase by $2,000/month every five years, continuing the same rent increase set by the last two options of the 2010 Amendment which covers 2023 to 2033." They based this argument entirely on Perencevic's testimony that she and Ralph agreed on the phone to $2,000 monthly rent increases every five years and that Ralph told her she need not write it into the contract. In moving for summary judgment, defendants never posited the theory that the rent increase provision was incorporated in the 2017 Amendment.

18

portions of Perencevic's deposition testimony also contradicted this interpretation of the written agreement. Perencevic expressly testified that Ralph said she did not "have to write anything" about rent because they would increase the rent as they had in prior amendments. According to Perencevic, she asked, "what do you want us to put in this amendment?" In addition to saying no writing was necessary, Ralph responded, "[Y]ou can put whatever you want. It can be . . . put the year 2063, but you don't have to worry about the rent because it's going to be the same like it was in every amendment until today." This was consistent with defendants' original position, which was that the parties had an oral agreement or understanding about rent increases, not that they would include an express written provision incorporating a prior practice into the 2017 Amendment.

Defendants' conflicting accounts of the parties' agreement created a triable issue of material fact, precluding summary judgment. (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1713 ["Because the parol evidence is contradictory, a factual question arises that should not be resolved on summary judgment."].) We further note that a jury could reject the extrinsic evidence completely and conclude that the parties did not reach any agreement beyond what was set out in the written agreement. (See, e.g., *Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1153 [finder of fact entitled to disbelieve plaintiff's uncontradicted testimony where the plaintiff "was pressing his claim against a dead person, . . . the purported agreement was oral, . . . it was being presented by the person who stood to gain

19

the most by its establishment and that there were no witnesses to the actual oral agreement"].)[6]

At oral argument before this court, defendants argued that they were entitled to summary judgment even if there is a factual dispute regarding the rent increases. For example, they asserted that plaintiff cannot establish financial elder abuse because there is no evidence that Perencevic should have perceived Ralph had any cognitive deficits since he was still driving and managing the restaurant property. However, proving Ralph was impaired, although helpful to plaintiff's case, is unnecessary. To establish elder abuse, plaintiff need only show that defendants knew or should have known that the bargain was unfair and likely harmful to the elderly adult. (Welf. & Inst. Code, § 15610.30, subd. (b) [wrongful use].)

Likewise, for undue influence, Ralph's vulnerability is relevant; impairment is not required. (See *Odorizzi v. Bloomfield School Dist.* (1966) 246 Cal.App.2d 123, 130 [listing factors for undue influence, including the victim's vulnerability, the influencer's authority, the tactics used, and the equity of the result].) These claims focus on whether defendants took advantage of Ralph, and the existence of a rent increase provision is critical in assessing whether defendants engaged in conduct that supports the elements of these causes of action. Similarly, in the motion for summary judgment, defendants' arguments regarding rescission and unconscionability hinge on Ralph proposing an oral rent increase provision, making them

---

[6]     Since we are reversing due to the amendment's ambiguity, we do not reach plaintiff's other arguments related to the summary judgment motion.

20

inappropriate for summary judgment. (See § 1689, subd. (b) [a party may rescind if consent given by *mistake of fact*, or obtained through duress, menace, fraud, or *undue influence*]; *Pinnacle Museum Tower Assn v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 [substantive unconscionability "pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided" and procedural unconscionability involves the fairness of circumstances of the contract's formation].)

III.    **The Trial Court Did Not Abuse its Discretion in Denying Plaintiff's Discovery Request for Financial Information**

Plaintiff asserts the trial court erred when it denied her motions to compel discovery of financial information from defendants. We review an order granting or denying a motion to compel discovery for abuse of discretion. (*John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1186.) We afford trial courts wide discretion to allow or prohibit discovery because "[a] circumspect approach to appellate review of discovery orders ensures an appropriate degree of trial court latitude in the exercise of that discretion." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 540.)

The trial court denied plaintiff's motions to compel for two reasons. First, the court found that plaintiff's discovery requests violated section 3295, which prohibits pretrial discovery of a defendant's financial condition except on motion, supported by affidavits "establish[ing] that there is a substantial probability that the plaintiff will prevail on the claim [for punitive damages] pursuant to Section 3294." (§§ 3295, subd. (c), 3294). Plaintiff made no motion pursuant to section 3295, instead bringing a

21

motion to compel which did not reference section 3295.[7]  We conclude the trial court did not err by placing the burden on plaintiff to seek leave of court to discover Chutter's financial information.  Section 3295 "makes it clear that a party desiring discovery of a defendant's financial information must bring a motion in order to obtain such information.  Then, the trial court must determine whether the plaintiff has established a 'substantial probability' of prevailing on the claim for punitive damages."  (*I-CA Enterprises, Inc. v. Palram Americas, Inc.* (2015) 235 Cal.App.4th 257, 283.)

Second, the trial court found that Chutter's income and profits were not relevant to either procedural or substantive unconscionability, as plaintiff asserted in her motions to compel.  Citing *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 926, plaintiff argues this was error and such financial information is relevant to the unconscionability analysis since, in evaluating a price term of a contract, courts " 'look to the basis and justification for the price, including the price actually paid by similarly situated consumers in a similar transaction,' " as well as " 'the true value' of the subject of the contract, product or service."  We disagree.

"California's discovery process allows for discovery of all relevant material and is designed to eliminate the element of surprise.  [Citations.]  'For discovery purposes, information is relevant if it "might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement . . . ." ' "  (*Garamendi v. Golden Eagle Ins. Co.* (2004) 116 Cal.App.4th 694,

---

[7]  Plaintiff has not furnished a reporter's transcript of the hearing on her motions to compel.  Therefore our analysis is based on plaintiff's motion and the trial court's minute order.

712, fn. 8; Code Civ. Proc., § 2017.010 [defining relevant].) Here, Chutter's income and profit information had no bearing on whether defendants procured the 2017 Amendment through unfair means. The information could not assist plaintiff in assessing procedural fairness for her unconscionability analysis. Regarding substantive unconscionability, Chutter's historical financial information would not shed light on the property's fair rental price. As plaintiff's own briefing points out in citing *Perdue*, the fairness of the bargain would be assessed by looking at the amount paid by similarly situated restaurateurs for a similar space, or the true value of the lease.

The trial court did not abuse its discretion in denying plaintiff's motions to compel.

## DISPOSITION

The judgment is reversed and remanded in part as to the court's grant of summary judgment, and is affirmed in part as to the trial court's denial of plaintiff's motions to compel. Plaintiff Nancy Truglio is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.


We concur:



EDMON, P. J.



EGERTON, J.